UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
NOV 22   2:41
SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| SERVICE EMPLOYEES INTER-<br>NATIONAL UNION, LOCAL 3, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    1:05-cv-1761-JDT-TAB <br> ) |
| CITY OF INDIANAPOLIS, INDIANA, | ) <br> ) |
| Defendant. | ) |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

**Introduction**

1) This action brought by the Service Employees International Union, Local 3, (hereinafter, "Local 3"), seeks declaratory and injunctive relief declaring that Section 391-302 of the Revised Code of the Consolidated City and County of Indianapolis/Marion, Indiana is unconstitutional in violation of the First and Fourteenth Amendments to the United States Constitution and enjoining its enforcement.

**Jurisdiction, venue, cause of action**

2) This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 since it arises under the Constitution of the United States.

3) Venue in this district is proper pursuant to 28 U.S.C. § 1391.

4) Declaratory relief is authorized pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201, 2202.

5) Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

–1–

**Parties**

6) Service Employees International Union, Local 3, is an Indianapolis chapter of a labor union that is actively organizing with local commercial office janitors.

7) Indianapolis is a city consolidated with Marion County, Indiana, the county within which it is located. See I.C. 36-3-1-1, *et seq*.

**Factual allegations**

8) Within its Revised Code, the consolidated City and County of Indianapolis-Marion County, Indiana, (hereinafter "City") has enacted Section 391-302 (hereinafter, "Noise Ordinance"), an ordinance restricting noise.

9) The City's Noise Ordinance states in relevant part:

> (a) …it shall be unlawful for any person to make, continue or cause to be made or continued any loud, unnecessary or unusual noise, or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health and peace or safety of others within the city. Accordingly, the following acts, among others, are declared to be loud, disturbing and unnecessary noises and in violation of this section, but such enumeration shall not be deemed to be exclusive:
>
> …
>
> (3) *Loudspeakers, amplifiers for advertising*. Playing, using or operating, … any … musical instrument … at any place upon the public streets … for the purpose of … attracting the attention of the public to any activity or building or structure, which is so used as to disturb and annoy other persons in their businesses, homes or elsewhere in their right of personal privacy and quiet.
>
> (4) *Yelling, or shouting*. Yelling, shouting, hooting, whistling or singing on the public streets, particularly between the hours of 10:00 p.m. and 7:00 a.m., or at any time or place so as to annoy or disturb the quiet, comfort or repose of persons in any office, or in any dwelling, hotel or other type of residence, or of any person in the vicinity.
>
> …
>
> (13) *Drums*. The use of any drum, horn or other instrument or device for the purpose of attracting attention by creation of noise to any performance, exhibition, show or sale; except in a parade or place for which a permit has been granted.
>
> …

City Revised Code, §391-302(a)(3)(4), attached hereto.

10) The City's stated purpose for its Noise Ordinance is "to secure and promote the public health, comfort, convenience, safety, welfare and prosperity, and the peace and quiet of the inhabitants and visitors in this city." City Revised Code, §391-301(3).

11) A first violation of §391-302(a) in a calendar year is "subject to admission of violation and payment of the designated civil penalty…" City Revised Code, §391-302(b).

12) A second and subsequent violations of §391-302(a) in a calendar year is punishable by a penalty of not more than two thousand five hundred dollars ($2,500). Id.; §103-3(a).

13) The City is also authorized to "enjoin or abate" any violation of the Noise Ordinance by "appropriate action." City Revised Code, §103.3(b).

14) The Service Employees International Union is an international labor union whose members are service workers.

15) Local 3 is a chapter of this union, with an office located in Indianapolis, Indiana.

16) The Indianapolis office of Local 3 is actively organizing local commercial building janitors.

17) Since approximately June 15, 2005 and as part of its organizing efforts, Local 3 has instituted the "Justice for Janitors" campaign in which Local 3 and its supporters have engaged in an unfair labor practice strike against Group Service France (GSF) on behalf of the janitors.

18) The Local 3 strike consists of picketing on City sidewalks at various locations and at various times of day in downtown Indianapolis.

19) Local 3 and its supporters use various noise-makers while picketing in order to draw the attention of those around them to their strike.

20)    Local 3 and its supporters view the use of noise-makers as an essential function of picketing employers' labor practices.

21)    Since they began their strike, Local 3 and its supporters have picketed on behalf of the janitors at downtown Indianapolis locations that include the following: the outer sidewalks around Monument Circle, sidewalks on the corner of Washington and Illinois streets, sidewalks on the corner of Capitol and Washington streets, sidewalks on the corner of Capitol and Georgia streets, and sidewalks on the corner of Ohio and Delaware streets.

22)    Since they began their strike, Local 3 and its supporters have picketed at various times of day in between the hours of 8:00 a.m. and 9:00 p.m.

23)    While picketing, Local 3 and its supporters walk up and down the public sidewalks, chanting various words of protest regarding GSF's employment practices and often holding signs which also protest those practices.

24)    While picketing, Local 3 and its supporters also sometimes ring bells and/or beat on drums or buckets to call attention to themselves and their strike.

25)    During over a dozen different picketing occasions, Local 3 and its supporters have been approached by Indianapolis Police Department (IPD) officers regarding the noise level of the picketing activities.

26)    On some, but not all, of these occasions, the IPD officers informed Local 3 and its supporters that IPD had received complaints regarding the noise being made by the picketers.

27)    On some of these occasions, IPD officers informed Local 3 and its supporters that they could not make any noise at all; on other occasions, IPD officers stated that the picketers could chant but could not use other noise-makers such as musical instruments.

28)    On some occasions, IPD officers only gave the picketers verbal warnings regarding the

noise level; on other occasions, IPD officers gave the picketers a verbal warning and then a citation for violation of the Noise Ordinance; on yet other occasions, IPD officers gave some of the picketers citations for violation of the Noise Ordinance with no previous verbal warning.

29) On occasions where IPD officers issued citations for violations of the Noise Ordinance, the officers cited individuals at random rather than citing all picketers.

30) For example, on or about late July 2005, Local 3 and is supporters were picketing on the sidewalks in front of a garage located on Illinois street, in between Ohio and Market streets, and one of the picketers was ringing a bell; an IPD officer cited three individual picketers who were not ringing a bell for violation of the Noise Ordinance, while the bell-ringer was not cited at all.

31) On various occasions, Local 3 and its supporters have picketed on downtown Indianapolis sidewalks using bass drums and other instruments without any contact from city police at all.

32) On or October 13, 2005 at about 6:30 p.m., Local 3 and its supporters were picketing on the outer sidewalks surrounding Monument Circle, using drums and chanting, when they were approached by an IPD officer and informed that they were in violation of the Noise Ordinance.

33) On this occasion, although no one was cited, the IPD officer did inform them that they were not permitted to ever make any noises during their picketing except chanting, and that even chanting too loudly could result in a Noise Ordinance violation.

34) Rebecca Maran is a lead organizer employed with Local 3 who has organized the Justice for Janitors campaign, including the janitors' strike activities against GSF.

35) On or about October 17, 2005, Ms. Maran initiated a meeting with Captain John Bent of the IPD regarding Local 3's strike activities on the public streets downtown.

36) At this meeting, Captain Bent stated that Local 3 and its supporters could continue to

picket on the sidewalks of downtown Indianapolis while chanting and using noise makers so long as the IPD received no complaints regarding their noise; however, he stated that the picketers could not ever use buckets or drums when on or around Monument Circle.

37)   While picketing on the sidewalks on the corner of Washington and Illinois streets at approximately 6:30 pm on October 26, 2005, a Local 3 supporter was issued a citation by an IPD officer for ringing a bell, although the officer confirmed that the officer had received no complaint regarding the picketers' noise.

38)   On November 1, 2005, Captain Bent telephoned Rebecca Maran to inform her that the citation issued to the bell ringer on October 26, 2005 was being voided, although he did not say why.

39)   Local 3 and its supporters are uncertain what is required of them by the City's Noise Ordinance when they are engaged in picketing activities downtown in the future.

40)   There are currently no citations outstanding that have been issued to any Local 3 supporters as a result of picketing activities on behalf of the janitors.

41)   The City's Noise Ordinance is causing the plaintiffs irreparable harm for which there is no adequate remedy at law.

42)   At all relevant times defendant has acted under color of state law.

**Claims for relief**

43)   The City's Noise Ordinance is a content-based restriction on First Amendment activities that is not narrowly tailored to a compelling government interest, in violation of the First Amendment to the United States Constitution.

44)   The City's Noise Ordinance is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment to the United States Constitution as well as the First

Amendment to the United States Constitution.

45) The City's Noise Ordinance is unconstitutionally overbroad on its face in violation of the First Amendment to the United States Constitution.

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

1. Accept jurisdiction of this case and set it for hearing.

2. Declare that Section 391-302 of the Revised Code of the Consolidated City and County of Indianapolis/Marion, Indiana is unconstitutional for the reasons specified above.

3. Enter a preliminary injunction, later to be made permanent, preventing the implementation and enforcement of Section 391-302 of the Revised Code of the Consolidated City and County of Indianapolis/Marion, Indiana.

4. Award plaintiff its reasonable attorneys' fees and costs.

5. Award all other proper relief.

Jacquelyn Bowie Suess
Indiana Civil Liberties Union
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059 ext. 225
Fax: 317/635-4105
Email: jacquelyn.bowie-suess@iclu.org

Attorney for Plaintiff